UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RYAN ROGAN,

                 Plaintiff,

                                    Civil Action No. 4:19-cv-12975

v.                                Honorable Matthew F. Leitman
                                    Magistrate Judge David R. Grand

TIMOTHY TOMLINSON and
CITY OF ROSEVILLE,

                 Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 36)

*Pro se* Plaintiff Ryan Rogan ("Rogan") brings this action pursuant to 42 U.S.C. § 1983 against defendants the City of Roseville ("Roseville") and its City Attorney, Timothy Tomlinson ("Tomlinson") (collectively, "Defendants"). (ECF No. 34.) Rogan's case arises out of his arrest in August of 2015 when Roseville police officers found him in his car, acting disorderly and in possession of marijuana. Rogan refused to take certain sobriety tests, and he then faced a series of administrative and legal proceedings. In his operative second amended complaint, Rogan asserts claims for violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as state law claims for breach of fiduciary duties, fraud in the inducement, and gross negligence. (*Id.*)

Before the Court is Defendants' Motion to Dismiss and for Summary Judgment. (ECF No. 36.) Rogan filed a response, and Defendants filed a reply. (ECF Nos. 39, 40.) The Court held a hearing on this matter on November 20, 2020. Although certain of Rogan's claims are clearly subject to dismissal, both parties misapprehend some of the most fundamental issues in this case.

Accordingly, Defendants' instant motion should be granted in part and denied in part without prejudice. Defendants should then, consistent with the analysis below, be permitted to file a renewed motion to dismiss the sole remaining claim in this case, should they deem such a motion appropriate.

## I.   CASE BACKGROUND[1]

### a.   *Michigan's Implied Consent Law*

Because many of the salient facts of Rogan's case revolve around his refusal to take sobriety tests when requested by the arresting officers, it is helpful to start with a discussion of Michigan's "implied consent" laws. In Michigan, "[a] person who operates a vehicle upon a public highway or other place open to the general public [] within this state is considered to have given consent to chemical tests of his or her blood, breath, or urine for the purpose of determining the amount of alcohol or presence of a controlled substance or other intoxicating substance, or any combination of them, in his or her blood or urine or the amount of alcohol in his or her breath [if he is arrested for operating a vehicle while intoxicated] . . ." M.C.L. § 257.625c.

"A peace officer who has reasonable cause to believe that a person was operating a vehicle [while intoxicated] . . . may require the person to submit to a preliminary chemical breath analysis."

---

[1] Rogan's second amended complaint is concise, but also sparse in terms of its factual background; only about 2 of its 9 pages contain factual allegations. (ECF No. 34.) As discussed below, however, at the motion to dismiss stage, the Court may consider not only the facts alleged in the complaint, but also facts derived from "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). All of the documents and evidence discussed below falls within these categories and may be considered by the Court. *See Maturen v. Lowe's Home Centers, Inc.*, No. 06-CV-15126, 2007 WL 3173962, at *4 (E.D. Mich. Oct. 26, 2007). The Court will also consider as a proposed supplement to Rogan's complaint the allegations asserted in his affidavit in support of his response to Defendants' motion. (ECF No. 39, PageID.314-17.)

M.C.L. § 257.625a(2)(d).  This is referred to colloquially as a "preliminary breath test" or "PBT."

A driver's refusal to take a PBT constitutes a *civil infraction*, and nothing more.  *Id.*

The statutory scheme then contemplates the peace officer requesting the driver to take a "chemical test" ("Chemical Test"), which presumably utilizes more sophisticated testing equipment.  The relevant provision provides that, "[r]efusing a peace officer's request to take a [Chemical Test] will result in the suspension of his or her operator's or chauffeur's license and vehicle group designation or operating privilege and in the addition of 6 points to his or her driver record."  M.C.L. § 257.625a(6)(b)(v).  But that is just the beginning of the consequences of refusing to take a ***Chemical Test.***[2]

Section 257.625d provides, "If a person refuses the request of a peace officer to submit to a chemical test offered under section 625a(6) . . . [a] written report shall immediately be forwarded to the secretary of state by the peace officer.  The report shall state that the officer had reasonable grounds to believe that the person had [been operating a vehicle while intoxicated], and that the person had refused to submit to the test upon the request of the peace officer and had been advised of the consequences of the refusal.  The form of the report shall be prescribed and furnished by the secretary of state."  M.C.L. § 257.625d.

Section 625e provides, "If a person refuses to submit to a chemical test pursuant to section 625d, the peace officer shall immediately notify the person in writing that within 14 days of the

---

[2] To be clear, all of the following provisions expressly apply only where a driver refuses to submit to a *Chemical Test*; they have nothing to do with a driver's refusal of a *PBT*.  *See* M.C.L. § 257.625a(6) ("The following provisions apply to chemical tests and analysis of a person's blood, urine, or breath, ***other than a preliminary chemical breath analysis***) (emphasis added).

The Court highlights this point because both Rogan and Defendants repeatedly conflate the two in their filings.

date of the notice the person may request a hearing as provided in section 625f.  The form of the notice shall be prescribed and furnished by the secretary of state."  M.C.L. § 257.625e.

Section 625f provides that a driver who does not request the hearing described in section 625e shall have his license suspended by the Secretary of State for one year.  M.C.L. § 257.625f(1)(a).  Where the driver does request a hearing, Section 625f provides the mechanics for how it will be conducted.  It also provides that if the driver does not prevail, his license shall be suspended for one year.  M.C.L. § 257.625f(7).  But, a prevailing driver's victory at the hearing may be fleeting.  Subsection (8) provides, "If the person who requested the hearing prevails, the peace officer who filed the report under section 625d may, with the consent of the prosecuting attorney, file a petition in the circuit court of the county in which the arrest was made to review the determination of the hearing officer as provided in section 323."  M.C.L. § 257.625f(8).

Section 625g contains some of the most important provisions to the issues raised by Rogan in this case, including:

> (1) If a person *refuses a chemical test* offered under section 625a(6), the peace officer who requested the person to submit to the chemical test shall … (a) On behalf of the secretary of state, immediately confiscate the person's license or permit to operate a motor vehicle and, if the person is otherwise eligible for a license or permit, issue a temporary license or permit to the person. . . . (b) [] (i) Forward a copy of the written report of the person's refusal to submit to a chemical test required under section 625d to the secretary of state [,] (ii) [n]otify the secretary of state by means of the law enforcement information network that a temporary license or permit was issued to the person[, and] (iii) [d]estroy the person's driver's license or permit.

> * * *

> (3) A temporary license or permit issued *under this section* is valid for 1 of the following time periods:

>> (a) *If the case is not prosecuted*, for 90 days after issuance or until the person's license or permit is suspended under section 625f, whichever occurs earlier.  *The prosecuting attorney shall notify the secretary of state if a case referred to the prosecuting attorney is*

4

> ***not prosecuted.*** The arresting law enforcement agency shall notify the secretary of state if a case is not referred to the prosecuting attorney for prosecution.
>
> (b) ***If the case is prosecuted***, until the criminal charges against the person are dismissed, the person is acquitted of those charges, or the person's license or permit is suspended, restricted, or revoked.

M.C.L. § 257.625g(1), (3) (emphasis added). With this statutory framework in mind, the Court turns to the facts of Rogan's case.

### b.  *Factual Background*

On August 9, 2015, Rogan was sitting in his car with the engine running, and playing music loudly enough that a person had called the police to complain. (ECF No. 36-3.) A Roseville police officer approached his car and asked for his license. As the officer was writing Rogan a ticket for the loud music, Rogan cranked it up louder. The officer asked him to step out of the car, and when Rogan did, the officer noticed that he was unsteady on his feet and his breath smelled of intoxicants. The officer asked Rogan to perform field sobriety tests, but Rogan refused. The officer also requested that Rogan take a PBT, but he again refused. Rogan's refusal to take the PBT constituted a civil infraction, and nothing more. M.C.L. § 257.625a(2)(d).

Rogan was arrested, and during a search of his vehicle, officers found a large amount of marijuana. Rogan was taken to the police station where he was asked to take a Chemical Test, but he refused. As explained above, Rogan's refusal to take a Chemical Test gave rise to far more serious consequences. The arresting officer confiscated Rogan's license, issued him a temporary one, and advised the Secretary of State of Rogan's refusal to take a Chemical Test. Rogan requested a Driver's License Appeal Hearing before the Secretary of State to challenge the automatic suspension of his license. The hearing was held a few weeks later on October 26, 2015, but no police officer appeared for the hearing. Rogan thus avoided the automatic suspension and

was allowed to continue to operate a motor vehicle under the MCL 257.625g permit that had been issued to him.

But, this did not mean that Rogan's regular driver's license was restored because the statute still gave the arresting officer and local prosecutor an opportunity to file a petition in Circuit Court. M.C.L. § 257.625f(8).  No such petition was filed as to Rogan, however.  In other words, Rogan was not charged for his refusal to take the Chemical Test.  Nor was he charged with any alcohol-related driving offense.  Instead, on March 14, 2016, the People of the City of Roseville filed an action against Rogan in Roseville's 39th District Court, Case No. 15-RV-1685 (the "Roseville Case").  In that case, Rogan was charged criminally with disorderly conduct and two counts related to his marijuana possession (ECF Nos. 40-2; 40-4), and he faced a civil infraction **for refusing the PBT** (ECF No. 40-5; 40-6).  As explained below, *infra* at 12-16, this suggests that "the case" against Rogan was "not prosecuted."  M.C.L. § 257.625g(3)(a).

Rogan spoke to someone at the Secretary of State the same day, and was advised that his driver's license could not be released "until the City removed the hold."  (ECF No. 39, PageID.315.)  It appears that neither Tomlinson, nor any other Roseville employee took any action that would have caused the Secretary of State to release Rogan's driver's license.  Thus, Rogan's license remained suspended.

Rogan's allegations fast-forward about two years to October 13, 2017, when he was in court for his trial.  (ECF No. 39, PageID.315.)  At that time, Rogan and the Defendants executed a document entitled "Release and Hold Harmless" (the "Release").  (ECF No. 36-2.)  Rogan's attorney also signed the Release.  (*Id.*)  The short Release, the substance of which covers about a third of a page, provides:

> In consideration of the dismissal of all charges[3] in the above matter [Case 15-RV16185] with prejudice and the forfeiture of funds received by [Roseville] in the arrest of [Rogan],
>
> [Rogan] agrees to release the city, its officers, employees, and agents from any claims damages, or causes of action of any kind because of the alleged injuries or other damages suffered by [Rogan] that may arise from the incident which gave rise to this case or from the prosecution of this case.
>
> [Rogan and Rogan's attorney] each represent and warrant that they have read the terms and provisions of the release, have conferred regarding the release, and acknowledge that the release is being provided without duress or coercion of any kind being applied against [Rogan].

(ECF No. 36-2.)

Rogan asserts that before signing the Release, he asked Tomlinson whether it included "the release of [his] driver's license" and his "property," and that Tomlinson responded in the affirmative. (ECF No. 39, PageID.315.) After they signed the Release, Rogan (along with a companion and Rogan's attorney) met Tomlinson at the police station to obtain his property. (*Id.*) However, the evidence locker was closed and Rogan was told to call back on the following Monday to retrieve his property. (*Id.*)

That following Monday, October 16, 2017, Rogan spoke with a lieutenant at the Roseville Police Department who told Rogan he could not get his property back because he had "signed a forfeiture." (*Id.*) A few days later, Rogan went to the Secretary of State and was informed that "there was still a hold on [his] license" by Roseville. (*Id.*, PageID.315-16.) Rogan claims that he "continued to check on the status of [his] driver's license at the Secretary of State in 2017 multiple times, and in 2018 multiple times, and in 2019 and recently in 2020." (*Id.*)

It was not until June 5, 2019, that Rogan raised the issue with Roseville, when he went to the Roseville Police Department to request a release of the "hold" on his driver's license. (*Id.*,

---

[3] It appears that the civil infraction for Rogan's refusal to take the PBT had been dismissed on May 10, 2016. (ECF No. 40, PageID.334; 40-5, PageID.359.)

7

PageID.316.)  He claims he was told to go to the 39th District Court.  (ECF No. 34, PageID.182.)
He then went to the 39th District Court and was informed it would take about two days to see the
hold released.  (*Id.*)  On June 7, 2019 Rogan's suspended license expired, as did the temporary
license provided to him in October 2015 after his actual license was confiscated.  (*Id.*; ECF No.
39, PageID.316.)  Due to the continuing hold, however, he was unable to renew his license.  (*Id.*)
On both June 7th and June 8th of 2019, Rogan went to the Secretary of State to verify the release
and was informed that the "hold" by the City of Roseville was still in place.  (*Id.*)  On June 19,
2019, Rogan again went to the 39th District Court to request the hold be released and he was
directed to go back to the Roseville Police Department.  (*Id.*)  When he advised that the Police
Department had referred him to the 39th District Court, he was told "there was nothing on their end
they could do to release the driver's license hold."  (*Id.*)

Rogan then contacted multiple attorneys to help him, but their calls to the Roseville Police
Department and the 39th District Court were unsuccessful in getting his driver's license "hold"
released.  (*Id.*)  Eventually, on October 10, 2019, Rogan filed this lawsuit.  In his operative second
amended complaint, Rogan alleges a number of claims against the City of Roseville and
Tomlinson, including that they (1) breached fiduciary duties by failing to remove the hold on his
license following the Release's execution; (2) fraudulently induced him to enter into the Release
knowing they would not release his license; (3) were grossly negligent in their failure to honor
their obligations in the Release; (4) violated his Eighth and Fourteenth Amendment rights; (5)
conspired to violate his civil rights; and (6) deprived him of his rights under color of law (under
18 U.S.C. § 242).  (ECF No. 34.)

Rogan served his complaint on the City of Roseville on November 25, 2019, and he served
Tomlinson on January 28, 2020.  (ECF No. 39, PageID.317.)  Secretary of State records show that

Rogan's driver's license was released to him on December 10, 2019. (*Id.*; ECF No. 36-6, PageID.249.)[4] Defendants now move to dismiss Rogan's second amended complaint, arguing principally that (1) his claims are barred by the Release, (2) Rogan fails to state a claim for each count, and (3) Defendants are entitled to governmental immunity on the state tort claims. (ECF No. 36.) Defendants alternatively argue (for every claim except conspiracy to violate 42 U.S.C. § 1983) that they are entitled to summary judgment. (*Id.*)

## II. STANDARD OF REVIEW

### a. *Failure to State a Claim*

Defendants seek to dismiss Rogan's second amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36, PageID.192.) Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not

---

[4] Tomlinson contends that there was no discussion about Rogan's license at the time of the Release's execution, and that he had no knowledge of an issue with Rogan's license until he became aware of the instant lawsuit after Rogan served the City. (ECF No. 36-4.) Finally, Tomlinson contends that when he became aware of the issue, he promptly contacted the Secretary of State, which resulted in the release of Rogan's license on December 10, 2019. (*Id.*) At this stage of the case, however, whether the Court is examining Defendants' motion as one to dismiss Rogan's complaint or for summary judgment, Tomlinson's disputed factual contentions cannot be credited.

impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.  Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true.  *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  That tenet, however, "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements.  *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009).  Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading."  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

When considering a motion testing the sufficiency of a complaint, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett*, 528 F.3d at 430.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.  *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir.

2007).  Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### b.  *Summary Judgment*

In the alternative, Defendants seek summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 36, PageID.192.)  Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion,

the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).   Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Id.*  (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment."  *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

## III.    ANALYSIS

Rogan asserts a number of distinct claims in his second amended complaint.  Under federal law, Rogan claims violations of the Eighth and Fourteenth Amendments (under 42 U.S.C. § 1983), conspiracy to violate his civil rights (under 42 U.S.C. § 1983), and deprivation of rights under color of law (under 18 U.S.C. § 242).  (ECF No. 34.)  Under Michigan law, Rogan also claims breach of fiduciary duties, fraud in the inducement, and gross negligence.  (*Id.*)

### a.  *Federal Due Process Claim*

The central issue in this case is Rogan's contention that the Defendants' failure to take actions necessary to "release" the hold on his driver's license violated his due process rights under the Fourteenth Amendment to the United States Constitution.  Both parties' arguments on that issue revolve around M.C.L. § 257.625g(3)(b).  Rogan claims that under section 625g(3)(b), Tomlinson was required to notify the Secretary of State of the Roseville Case's termination, while Defendants contend that section 625g(3)(b) imposed no such obligation on Tomlinson.  While

Defendants are correct that section 625g(3)(b) imposes no notification obligation on a prosecutor, the problem with both parties' arguments is that section 625g(3)(b) does not apply here.

Section 625g begins, "If a person **refuses a chemical test** offered under section 625a(6) …." M.C.L. 257.325g(1) (emphasis added). It then goes on to instruct the peace officer who requested the person to submit to the Chemical Test what to do next. Specifically, section 625g(1)(a) and (b) require the peace officer to "confiscate the person's license," "issue a temporary license," and "[f]orward a copy of the written report of the person's refusal to submit to a **chemical test** required under section 625d to the secretary of state." *Id.* (emphasis added).

Subsection 625g(2) is irrelevant here as it only applies where the "person submits to a chemical test offered under section 625a(6) . . ." and there is no dispute that Rogan did not submit to such a test. M.C.L. 257.625g(2).

That brings the Court to section 625g(3) which provides:

> (3) ***A temporary license or permit issued under this section*** is valid for 1 of the following time periods:
>
> > (a) ***If the case is not prosecuted***, for 90 days after issuance or until the person's license or permit is suspended under section 625f, whichever occurs earlier. ***The prosecuting attorney shall notify the secretary of state if a case referred to the prosecuting attorney is not prosecuted.*** The arresting law enforcement agency shall notify the secretary of state if a case is not referred to the prosecuting attorney for prosecution.
> >
> > (b) ***If the case is prosecuted***, until ***the criminal charges*** against the person are dismissed, the person is acquitted of those charges, or the person's license or permit is suspended, restricted, or revoked.

M.C.L. § 257.625g(3)(a), (b) (emphasis added).

Subsection 625g(3)(a) only applies when "the case is not prosecuted." The term, "the case" is not defined in the statute. However, reading the statute as a whole makes clear that it only applies with respect to *criminal charges* that follow a person's refusal to submit to a Chemical

Test.  First, section 625g(1) specifically states that it applies where "a person **refuses a chemical test** offered under section 625a(6)," and section 625(a)(6) expressly applies **only** to Chemical Tests and not to PBTs.  M.C.L. 257.625a(6) ("The following provisions apply to chemical tests and analysis of a person's blood, urine, or breath, **other than a preliminary chemical breath analysis**") (emphasis added).  Second, section 625g(3) concerns a "temporary license [] issued under this section," and, under section 625g(1)(a), temporary licenses are only issued in connection with a person's refusal to submit to a Chemical Test.  Third, section 625g(3)(b) talks about the "the case" being prosecuted "until the criminal charges against the person are dismissed," but refusing to take a PBT results only in the issuance of a civil infraction, not a criminal charge.

Here, the evidence unequivocally shows that Rogan was charged only with a civil infraction for refusing the PBT, and that he was not criminally charged with refusing the Chemical Test or other alcohol-related driving offense.  Thus, contrary to both parties' assumptions, to the extent any section of 625g(3) is implicated at all here, it would be section 625g(3)(a), because no criminal case was brought against Rogan.  *See* M.C.L. § 257.625(3)(a) ("If the case is not prosecuted . . .").

Because both parties' due process arguments are based on the incorrect assumption that the claims and defenses in this case are governed by section 625g(3)(b), the Court declines to examine the other intricacies of their arguments, such as what remedies were available to Rogan that might bear on his due process claim's viability.  Moreover, the Court notes that Defendants err by suggesting that Rogan's due process claim fails as matter of law because he has no fundamental right to drive a car.  (ECF No. 36, PageID.220-21.)  Although "there is no fundamental right to drive a motor vehicle," *Duncan v. Cone*, No. 00-5705, 2000 WL 1828089, at *2 (6th Cir. Dec. 7, 2000), "[a] person has a property interest in her driver's license, which, once issued, may not 'be

taken away without that procedural due process required by the Fourteenth Amendment.'" *Estate of Wobschall v. Ross*, No. 19-CV-1796-JPS, 2020 WL 5645689, at *6 (E.D. Wis. Sept. 22, 2020) (quoting *Bell v. Burson*, 402 U.S. 535, 539 (1971)). Again, given the parties' misapprehension of the applicable statutory scheme, it would be inappropriate for the Court to attempt to resolve their arguments about what process was due to Rogan.

Finally, at least on the present record, the Court declines to find that the Release bars Rogan's claims. Defendants' conclusory argument – they cite no legal authority for their position – rests on the same incorrect view of Rogan's claims as discussed above. (ECF No. 36, PageID.213-14.) Rogan released Defendants from claims "that may arise from the **incident which gave rise <u>to this case</u>** or from the **prosecution <u>of this case</u>**." Throughout their motion papers, Defendants act as if the "case" against Rogan – the Roseville Case – was brought pursuant to section 625g and that the "hold" on his license was tied to that case. Defendants then contend, "[i]t is undisputed that the restriction on [Rogan's] driver's license arose from [his] arrest" and that Rogan's "claim that he suffered damages *from the license restriction* is plainly a 'claim, damage[], or cause[] of action' contemplated by the Release." (ECF No. 36, PageID.214) (emphasis added). While the Defendants may be correct as to their first contention, the second one is hardly "plain."

As discussed above, the only "case" against Rogan was the Roseville Case, and that case had nothing to do with Rogan's license suspension because it involved only the civil infraction he received for failing to take the PBT; Rogan was not charged criminally with refusing to submit to the Chemical Test. Thus, the only alcohol-related issue "which gave rise to [the Roseville Case]" was Rogan's refusal to take the PBT. Accordingly, at least on the present record, Defendants have not shown that Rogan's claims about his driver's license arose from "the incident which gave rise

15

to [the Roseville Case]," and the Court declines to find that Rogan's federal due process claims are barred by the Release.[5]

For all of these reasons, Defendants' motion to dismiss and/or for summary judgment as to Rogan's federal due process claim[6] should be denied without prejudice. Because both parties misapprehended the salient statutory scheme, Defendants should be permitted to file a renewed motion to dismiss as to these claims within 30 days of the Court's ultimate ruling on this Report and Recommendation should they deem such a motion appropriate.

### b. Other Federal Claims

Although Rogan's due process claims are not ripe for dismissal for the reasons stated above, his other federal claims fail as a matter of law should be dismissed.

### i. Eighth Amendment Claim

Rogan alleges that by not releasing his driver's license sooner, Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 34, PageID.184.) He argues that Defendants illegally and unconstitutionally punished him for a crime that he was not found guilty of committing. (*Id.*) Defendants argue, and the Court agrees, that even if any fault can be attributed to Defendants, the restriction on Rogan's driver's license falls

---

[5] Moreover, although there is nothing inherently improper about the Release, *see MacBoyle v. City of Parma*, 383 F.3d 456, 459 (6th Cir. 2004) ("The Supreme Court has upheld the validity of release-dismissal agreements whereby a criminal defendant releases his right to file a civil rights action in return for a prosecutor's dismissal of pending criminal charges, as long as the agreement meets certain criteria."), despite having the burden of proof, Defendants failed to address the factors that would allow the Court to find it enforceable. *See id.* ("[t]he enforcement of such an agreement is appropriate if a court decides that (1) it was entered into voluntarily; (2) there is no evidence of prosecutorial misconduct; and (3) the enforcement furthers the public interest," and "[t]he burden of proof in this analysis 'falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense.'") (quoting *Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993)).

[6] As discussed below, *see infra* at 19-20, a different analysis applies to Rogan's failure-to-train *Monell* claim against Roseville.

16

far short of a cognizable Eighth Amendment violation.   (ECF No. 36, PageID.226-27.) Punishments that violate the Eighth Amendment are "incompatible with the evolving standards of decency that mark the progress of a maturing society" or that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal citations and quotations omitted).  Rogan fails to plead facts that could plausibly meet this standard.  At most, he has alleged that the failure to timely release the hold on his license resulted in various vague inconveniences to him.  (ECF No. 39, PageID.289-90) ("Rogan was unable to live his life in a manner one sees fit . . . by not being able to enjoy the opportunities to lead one's life without the intervention of others . . .")  As a matter of law, such inconveniences do not rise to the level of "unnecessary and wanton infliction of pain."  Therefore this claim should be dismissed.

### ii.   *Conspiracy Claim*

Rogan alleges that Defendants conspired and committed malicious acts in furtherance of their conspiracy to deprive him of his civil rights.  (ECF No. 34, PageID.184.)  Specifically, Rogan claims that Defendants "continued to place [him] in a continuous circle to have his driver's license released, while they knowingly knew the process to release a driver's license." (*Id.*, PageID.185.) This "continuous circle" seems to refer to Rogan's multiple interactions with the Roseville Police Department, 39th District Court, and both Lansing and Michigan Secretary of States to request the release of his driver's license.  In furtherance of the alleged conspiracy, Rogan argues that Defendants illegally withheld his license, failed to be truthful and forthcoming regarding the facts and circumstances leading to the release of the license, failed to investigate the facts and circumstances leading up to release of his license, and failed to comply with MCL 257.625g by releasing his license at the time the PBT charge was dismissed.  (ECF No. 34, PageID.185.)

Defendants argue that Rogan's allegations fail to plead a conspiracy claim with sufficient facts and specificity.  (ECF No. 36, PageID.227-29.)

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action . . . All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Rogan's conspiracy claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  First, Rogan had to plead *facts* showing that Defendants had a plan to deprive him of his civil rights. Here, the deprivation is either that he was denied due process by the continued hold on his driver's license or that he experienced an unnecessary and wanton infliction of pain and punishment as a result of the hold.  The latter claim fails because, as noted above, Rogan failed to plead a cognizable Eighth Amendment claim. *See Bartlett v. Washington*, 793 F. App'x 403, 408 (6th Cir. 2019) ("if there is no underlying constitutional violation, there can be no claim for conspiracy either."). Rogan's claim that Defendants conspired to violate his due process rights fails because Rogan provides no *facts* regarding a *plan* – an actual *conspiracy* – to deprive him of those rights.  Rogan fails to plead facts demonstrating that either Tomlinson or Roseville shared in a conspiratorial objective.  Simply alleging that two actors acted similarly with respect to the same subject matter does not imply they did so pursuant to an agreed-upon plan. *Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy" and is insufficient

to state a claim for relief without "further factual enhancement" of the existence of an actual agreement).  Here, even construing all reasonable inferences in Rogan's favor, he has simply not alleged any facts from which the Court could infer the existence of a "conspiracy" to violate his rights.  For all of these reasons, Rogan's conspiracy claim should be dismissed.

### iii.   Monell Claim

In his response brief, Rogan seems to allege a Fourteenth Amendment violation against Roseville based on an assertion that it failed to train its employees in how to release a driver's license "hold" that had been applied pursuant to M.C.L. § 257.625g.  (ECF No. 39, PageID.296-97.)  Even liberally construing the allegations in Rogan's second amended complaint, this claim fails and should be dismissed.

First, as a municipality, Roseville may not be held vicariously liable for the actions of its employees under § 1983.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Rather, a municipality is liable only when its official policy or custom directly causes the plaintiff's injury. *Id.* at 61.  Accordingly, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  To do this, the plaintiff must plead sufficient facts to show "'a direct causal link' between the policy and the alleged constitutional violation such that the [municipal policy] can be deemed the 'moving force' behind the violation."  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (citation omitted).  In this case, then, for Rogan to state a *Monell* claim against Roseville, he must identify a specific County policy and allege facts showing that it "directly caused [him to suffer] a deprivation of federal rights."  *Brown*, 520 U.S. at 415.  To do so, Rogan must demonstrate one of the following: (1) the existence of an

19

illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.  *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Rogan asserts that Roseville failed to properly train its employees with regards to M.C.L. § 257.625g and how to release a driver's license.  (ECF No. 39, PageID.296-97.)  While Rogan does describe a frustrating experience trying to get his license suspension resolved, in none of his filings does he allege any *facts* that would properly support a failure-to-train claim.  Instead, he simply speculates that because of the "run-around" he allegedly received from the Roseville Police Department and District Court employees (*id.*, PageID.290, 296-97; No. 34, PageID.182), Roseville must not have properly trained those employees in how to handle the release of a driver's license "hold" that had been applied under M.C.L. § 257.625g.  The law makes clear, however, that this type of speculative assumption is insufficient to state a *Monell* failure-to-train claim.

For example, in *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013), the Sixth Circuit held that a failure-to-train claim failed because the plaintiff had "not set forth any *facts* that there were prior instances of similar misconduct so as to show that the [defendant] was on notice that its training and supervision [] was deficient."  *Burgess*, 735 F.3d at 478 (emphasis in original).  And, in the recent Eastern District of Michigan case, *Gordon v. Bierenga*, No. 18-13834, 2019 WL 2205853, at *3 (E.D. Mich. May 22, 2019), the court dismissed a failure-to-train *Monell* claim where the plaintiff provided "no concrete factual allegations of other instances of [the alleged conduct] that plead or even support an inference of a pattern of unconstitutional conduct … [nor] any mention of what, if any, training exists regarding the [alleged conduct]."  For all these reasons, Rogan's failure-to-train claim against Roseville should be dismissed.

### iv.   Deprivation of Rights under Color of State Law Claim

Rogan also asserts a claim under 18 U.S.C. § 242, deprivation of rights under color of state law, in relation to his breach of fiduciary duties claim and his Fourteenth Amendment claim.  (ECF No. 34, PageID.183-84.)  However, as Defendants correctly note, there is no private right of action under 18 U.S.C. § 242.  *See, e.g.*, *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003).  Therefore, Rogan's 18 U.S.C. § 242 claim should be dismissed pursuant to Rule 12(b)(6).

### c.   State Law Claims

Finally, Rogan asserts state law claims of fraud in the inducement, breach of fiduciary duties, and gross negligence.  "[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims."  *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (quotation removed).  Here, although there is some overlap between Rogan's due process claim and his negligence claim, overall, the parties will benefit from a streamlined case before this Court.  Accordingly, the Court should decline to exercise supplemental jurisdiction over Rogan's state law claims and should dismiss those claims without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 36)** be **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**. Specifically, Defendants' motion should be **DENIED WITHOUT PREJUDICE** as to Rogan's due process claim, and Defendants should be given 30 days from the Court's ultimate ruling on this Report and Recommendation to file a renewed motion to dismiss as to that claim, should they deem such a motion appropriate.  Defendants' motion should be **GRANTED** in all other respects, except that Rogan's state law claims should be dismissed without prejudice.

Dated: December 18, 2020                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 18, 2020.

                                                 s/Eddrey O. Butts
                                                 EDDREY O. BUTTS
                                                 Case Manager